We'll hear argument next in the case of McGrath v. Dunecrest Condominium Association. Mr. McGrath. Mr. McGrath. Good morning. Michael McGrath on behalf of the plaintiffs in this case. The Fair Housing Act is a law that's been enacted to promote equal and not better housing for disabled individuals. The plaintiffs in this case for years have requested to install stairs in a small deck extension as a reasonable combination for their adult sons, twins, Tim and Marty who are both severely autistic. The record shows the request was made by the plaintiffs based upon the uniqueness of the plaintiffs' condominium unit in the Dunecrest Condominium Association. The back exit is surrounded by walls. It's surrounded by a large dune and there's a small opening of approximately three feet that you'd have to go through to exit if there was an emergency or a natural disaster. This is unique as compared to all the other units also because to exit the plaintiff's family, family members would have to enter onto another member's back deck, go through a deck, go through a gate that has been latched and locked and has been barricaded over the years and then go through another gate to gain access to a common area to get safely down to the ground in the case of emergency. Mr. McGrath, I know that there have been some discussions before 2018, but in 2018 when you kind of resurrected the project for the association's consideration, the initial email at least that you sent didn't mention the twins and the medical condition at all, right? Isn't that correct? based upon their disability and their inability to react in an emergency situation, that they have pacing, that they constantly pace and all the reasons stated in the brief. So for that email, it may be contained in that email, but I don't believe the record shows that the plaintiffs in any circumstance put the request on pause. To the contrary, it went through all the years and they were continually asking for this accommodation. In 2015, the plaintiffs met with the other three owners in the north building of this association. It's an association of only eight units, fully described what the request was for a small deck extension and stairs to go outside. And those three members submitted in writing that they had no objection to that request. There was no request or inquiry about the need for that reasonable accommodation because everyone in the association is fully aware of Tim and Marty's disability. It wasn't until 2018 that for the first time, the association required a special meeting to be held. This comes after all seven other units have been allowed freely to do different exterior modifications, including stairs, deck extensions or wraparounds that are much larger than the plaintiff's request. One request that was granted was even a room addition. So a special meeting was held. The plaintiffs expected the request to be granted or voted on, given the prior email from the three other unit owners, and they were taken aback. And the testimony in the record is that it was one of the heated, one of the hottest, most contested, heated meetings of this small association. During that meeting, there was no request by anyone for the need or the necessity of the deck and the stairs, because clearly that's been put out there by the plaintiffs throughout the years. The members that went against that modification in 2018 gave different reasons for denying that modification, being bylaw sections that don't exist, for reasons that just were not valid. And the one member, Ms. Polonis, at her deposition, she repeated three times when asked, why did you vote against it? And she said, I don't know. I don't know. In this association, Tim and Marty are the only mentally disabled individuals in the association. That's known to all the association members. Under the Fair Housing Act, it requires an accommodation, and such accommodation is reasonable and necessary to afford a handicapped person an equal opportunity to use and enjoy a dwelling. Certainly, based upon the record and the three different judges that handled this case below, have all found that the request was reasonable based upon all of the modifications that the other unit owners have installed through the years. So the question is, was the request necessary? The concept of necessity requires that, at a minimum, the showing the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability. Ameliorating, by its very definition, is to make a bad situation better. It's synonymous with helpful or improved. Common examples of reasonable accommodations for the disabled, we all are familiar with wheelchair ramps, seeing eye dogs, fire and smoke alarms that illuminate for the hearing impaired. I think the main, it seems like, as you rightly noted, the main dispute is about necessary, right? Whether or not there are facts in the record from which a reasonable jury can conclude that the requested project was necessary, given the condition of the two boys, or I guess men now. And so the district court, in its summary judgment order, went through the record and it excluded certain testimonies saying, for a variety of reasons, saying that they were not disclosed, pursuant to expert disclosure deadlines, and other reasons. And then putting that to the side, it looked to the record and said that there was no evidence in the record from which a reasonable jury can decide that it was necessary. And I'm wondering, putting aside the letters and testimony and the declaration that the district court found inadmissible, is there anything else in the record that you believe a reasonable jury could use to say, yes, the project was necessary to address the needs of the sons? Absolutely. And I would, besides all the evidence that we believe that the court abused its discretion in striking, and you noted that evidence being the declarations. We know what it is, and so if you could just turn to the rest of the record. But I would turn to, besides those witnesses, being Emick, Hartwell, and Kuznick, you also have Tim and Murray's parents. Specifically, you have Jill McGrath, who the record and all of the testimony is unrebutted. She's certified in applied behavior analysis. She ran a 10-year intensive program for both boys. She testified, and it went unrebutted, that the requested modification is a reasonable modification because it would affirmatively enhance Tim and Marty's ability to use and enjoy the dwelling unit. But did she testify as to necessity? Yes. And what did she say about necessity? She said that based upon the current situation, the back of the unit, that Tim and Marty would not be able to exit if there was a fire or a natural disaster. She said that both brothers, they constantly pace, and she would like a small extension of 6 to 8 feet of the deck to afford Tim and Marty additional space, outdoor space, in a safe environment to pace, which they do all day long to calm their nerves and to relieve stress. She also stated that it would afford additional space for them to use and enjoy, to have the family to be able to sit together and enjoy having a meal together outside. But specifically, she said that they would not be able to exit the back area if that area was consumed by fire, smoke, or natural disaster. If there was stairs allowed off of the front deck balcony, Tim and Marty would easily be able to exit the unit if the one main entrance was blocked off. And that's what makes it unique, and Jill certainly testified to that at length, and that's in the record. And can you point me to, because I don't have it right in front of me, would you have a record citation for that? Well, it's within the additional materials statements of fact, which the district court really did not review, and that the association did not dispute. So it's contained. I don't have the number off specifically. But you said it's in the deposition testimony? It's in Jill's deposition testimony, and it's also within the requested statement of facts that cites to her testimony. The additional material facts that I have highlighted are 159 through 166 and 169 through 174. And then you also have the sworn testimony of the association's president, Holly Candela, who stated, if disabled children need additional space for safety in an emergency, then let's get the stairs built. She also testified, let's get the steps for the safety of the children, and let's get them done ASAP. Further in her deposition, she acknowledged that none of that was… Now, is that an accommodation of a disability? Why isn't that something every person would prefer? Because it's unique to Tim and Marty's situation, Judge. Because the testimony in the record is that no one else within this association has a disability. You're not dealing with my question. Doesn't everybody want a second exit from a residence? This was District Judge Springmon's reason that the presentation of the plaintiffs didn't address accommodation of a disability as opposed to desires that everybody living there would have. Your brief doesn't really address the district judge's reasoning, so I'm asking you the district judge's question to give you that opportunity. Thank you, Judge. The district court found that there is a lack of causation, I believe you're asking about, linking necessary to equal opportunity. So the position is that Tim and Marty don't have the same equal opportunity to enjoy the dwelling as the other unit owners who have, in the record, four units have three easily accessible exits. You're not dealing with my question. My question, which is also the district judge's question, is why any owner of this unit without a disability wouldn't want a second secure exit. How is it an accommodation of a disability as opposed to an accommodation of a need almost everyone has? That's the district judge's question. Judge, I'm running to my rebuttal time. I think you should answer my question. I will. Judge, I believe that goes to the holding of Good Shepherd. And this case is different than what the holding the facts of Good Shepherd are, that obviously water is needed by everyone. Obviously most people want to have a safe exit or a number of safe exits. All we're asking for is an accommodation to allow Tim and Marty to have two safe exits that, at a minimum, all the other units have. So under Good Shepherd, where this court stated we can find the duty of reasonable accommodation. Counsel, is the issue that Tim and Marty can't get through the alternative exit because of the latching and their lack of dexterity, confusion, anxiety, is that your argument? All of that, yes, Judge, that they would not be able to, based upon their disability, would not be able to react in an emergency situation. They also don't have communication skills like every other member, including their family members, that could call out for help, that can use a cell phone, call 911. There's a number of disadvantages, obviously, that Tim and Marty have based upon their disability. And that is the reason for the reasonable accommodation request. And with that, I... Thank you, Mr. McGrath. Thank you. Mr. Parkinson. Good morning, and may it please the court. Charles Parkinson on behalf of the appellees. The district court properly concluded that the requested balcony extension with decks leading off the extension toward the beach was not a necessary accommodation under the Fair Housing Act because the additional room and the more room and the additional exit was too attenuated of a need to the McGrath's twin's disability. And therefore, the claim failed for lack of causation. The Fair Housing Act does not require accommodation unless there's that causal connection between the requested accommodation and the needs created by the disability. In short, the Fair Housing Act does not accommodate wants, only needs. This has been a case of wants. So, Mr. McGrath just said what distinguishes his family's situation is that the autistic residents couldn't call 911 for help if they find their exit blocked, whereas normal people could. Why isn't that something that needs an accommodation? Your Honor, there is a secondary exit. The fact is that that is an exit. I'm not asking for your views about how many exits there are. I'm asking a legal question, right? The way I got into this was Judge Springman said, and you're reiterating, everything they want is something perfectly fully abled people want. And Mr. McGrath just said, no, there is at least one difference. An autistic resident can't call 911. Why isn't that something in need of accommodation? Well, that's not the accommodation that was requested, Your Honor. The accommodation that was requested was an extension on an existing balcony. You're missing the point, counsel. They have asked for an accommodation that would allow easy exit by people who can't call 911. Now, why isn't that an accommodation of a disability? Your Honor, respectfully, that's simply not the requested accommodation here. The requested accommodation is what they would want to call a second exit. And that's a matter of safety. And everyone has a concern with safety, as Judge Springman indicated. The additional room analysis. You're just not dealing with my question. I'm sorry, Your Honor. Maybe I'm not understanding it, but this is not a request for the McGraths to be able to call 911. Nor was that the suggested accommodation. The suggestion that was just made right in front of you was that somebody who cannot call 911 may need an easy exit by stairs that doesn't encounter a locked gate. Now, that may or may not be adequate. It may or may not have been made in this record. It may or may not have been preserved for decision. But that's what you should address. That's a novel argument made this morning for the first time, Judge. All right. That at least is a response. Thank you. The requested accommodation. Is there evidence in the record about Tim and Marty's communication abilities? There is. For example, did their mother testify about that? Their mother did testify about that, yes.  And what does the record show? Well, the record shows that they do have difficulty, especially Marty, who is more severely autistic, has difficulty in communication. But that was certainly not ever presented to the association when it considered and denied the request for the balcony extension with the stairs. So is it your argument that the parents had to list and itemize every single reason why, right? Because the association and its members were aware of Tim and Marty's autism, correct? That's correct. And I think it's in the public domain that autism is a social communication disorder, correct? That's correct. And residents had interactions with the boys, probably to divine what their communication abilities were. So are you saying that plaintiffs had to, when they made the request, itemize the 20 reasons why the boys needed an easy exit? Certainly not. But if you look at the record that exists and you see the several occasions where the McGraths did make a request, there's an email from 2015 where they make a request, and it is in there. I see safety. I see safety as a theme. I see, in particular, the son's safety that was raised later on. Counsel has suggested that there's other evidence in the record about conversations over the years, perhaps not in an email, that the animating motivation for this was the boys' safety. Would you disagree with that? I would not disagree that there was a desire to have an additional safe exit, as opposed to having to go through what they call a gated exit, which is, and it's also in the record, that this is a common area. Everything outside of this eight-unit condominium, outside of the walls, is a common area, or a limited common area, including this path that goes through there. But I think you're opposing counsel's point as these two residents cannot access that alternative exit like other neurotypical people, right? They could if they would go to their neighbor and simply ask or to the association. But you just conceded that they have social communication issues. What I'm suggesting is that instead of the McGraths filing a federal lawsuit, they could go to the association and require the neighbor who has put this gate up to remove the gate. That is a common area. There is an easement for ingress and egress through that. But was there not an effort by the plaintiffs to mediate this before bringing it to federal court? I'm not aware of that, Judge. Okay, I'll ask you. The record indicates that there was a request made in 2015. At that point in time, the McGraths indicated that they wanted additional room for grilling. They wanted an additional entrance point. They wanted to avoid having to drag sand through the middle area of the condominium unit. And that's all they said. They also indicated that they would have locks on that entrance. And to the extent that they now say or suggest that the autistic children have trouble with locks, it seems to counteract that earlier request in 2015. In 2018, they repeated the request. The court has to consider something that the district court did not address, which was whether the plaintiffs had acquiesced to this property being as it is. They purchased it in 2009. They didn't make their first request for several years. They didn't make a formal request until 2015. And then they made the formal request on which this lawsuit is filed in 2018. And there is case law that suggests that if you have been living in a property with the existing exits, for example, and the existing room, that you've acquiesced to it. And you can't claim that this is a necessity. Is this some form of coming to the nuisance defense? No, but it goes to whether this is truly necessary, Judge. And that's the question here, whether this is caused by the twins' autism. And when the district court judge looked at this, she said that the issues of safety and the issues of additional room were something that everyone would be concerned with. And so the McGraths are no different than any other person who wants to have a safe, reliable exit out of their condominium unit or wants to have additional room, whether it be for grilling or, in this case, for tube feeding, which is one of the post hoc reasons that the McGraths argued to the district court on summary judgment. But the district court correctly found that they already had that type of room for tube feeding. They just wanted additional room. And they already had an exit. They just wanted another safer, reliable exit. And so these are things, like the court in Good Shepherd said, are common to everyone. You can't find the causal relationship between the disability and the requested accommodation. When they originally bought the unit, the secondary exit was through that other property? That's correct, through a common easement. So it's what they actually in the declaration call limited common area. So they have an easement through Mr. Hernandez's? Correct. And there's a gate, and it's been locked on occasion, and there have been storage crates, which Mr. Hernandez has put up, in order to keep people from being back on his deck area, because his bedroom window is immediately facing that deck. That goes to the issue of- And those boxes, they're no longer there, right? Currently I'm not aware whether they are or not. But it goes to whether there would be an easier route to take to go to the association and enforce that right to that limited common area and require Mr. Hernandez to remove the gate, remove the lock, remove anything that would serve as an impediment. So why didn't the association do that? It hasn't been requested. And the association's view is that it never does anything to help the owners unless there's an express request. Well, Your Honor, I'm not sure that that's the association's view. That's what you just said. We haven't done the simple thing to avoid this entire litigation because Mr. McGrath didn't request it in those terms. Your Honor, there was no request for that. You're correct. And the association did not affirmatively take the steps to require Mr. Hernandez to remove the gate, remove the lock, remove the storage bins. But this kind of goes to what the Fair Housing Act does not do, which it is not an avenue to litigate petty squabbles between homeowners. And that's what this really is, is that if there was a simpler way to address it, it seems like Mr. McGrath would have addressed it that way. But, you know, what's happened is this is a lawsuit that was filed after, by the way, being threatened by Mr. McGrath, and there was no indication that the twins and their need for additional room for tube feeding was ever mentioned by the McGraths. They did mention having additional room. They wanted additional room for drilling. They wanted another exit. They considered that that other exit would eliminate tracking sand through the common area on the interior of the condo. But they never addressed, you know, the true issue here, which is if they wanted a safer exit, they didn't have to file a federal lawsuit for it. And that goes to the district court's ruling with respect to the attorney fees. The district court found that when the McGraths, and by the way, using the accepted standard, when the McGraths filed this lawsuit, they did not have the grounds or the evidence that they later developed, which is, if you look at at least one of the cases that the McGraths cited in their reply brief with respect to the autistic children and the need for the fence. In that instance, the twins, or excuse me, the autistic children had issues with elopement, and the autistic child was diagnosed after the plaintiffs purchased their property. Here the McGraths' twins had been diagnosed long before they ever purchased this condominium. But in that case that the McGraths cited, the need was there when they went to their property owners' association and requested it. So with that, Judge, unless there's any other questions, I would ask you to affirm all three of the orders on appeal this morning. Thank you. Thank you very much. The case is taken under advisement.